HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GREGORY TURNER,

    Plaintiff,

v.

THE CITY OF PORT ANGELES, a city government and its agencies, and PORT ANGELES POLICE DEPARTMENT, a city department,

    Defendants.

Case No. C09-5317RBL

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CITY OF PORT ANGELES' MOTION FOR SUMMARY JUDGMENT

**Introduction**

THIS MATTER is before the court on Defendant's Motion for Summary Judgment. [Dkt. #9]. Port Angeles police officers arrested Plaintiff Gregory Turner on multiple occasions from 2003 through 2007. Turner claims that these arrests occurred because he is an African-American. Therefore, he alleges the following causes of action under state law: violation of substantive and procedural due process under the Washington State constitution, violation of Washington's Law Against Discrimination (WLAD), Negligent Infliction of Emotional Distress (NIED), violation of RCW 10.31.100 (governing warrant-less arrests), false arrest, and malicious prosecution. Plaintiff also alleges violations of the U.S. Constitution under 42 USC §1983. Specifically, he claims that officers employed by Defendant used excessive force and took unreasonable police action which deprived him of: liberty without due process of law, the right to equal protection of the law, and the right to be free from unreasonable searches and

ORDER
Page - 1

seizures.

Defendant requests summary dismissal of all claims.  Defendant argues that some of the statutes Plaintiff relies upon do not provide a private cause of action for money damages, that the police had probable cause to arrest Plaintiff, that arrests under the domestic violence statute are immune from suit, that municipal law enforcement activities are not subject to claims for NIED, and that the police treated Plaintiff and his co-defendants equally.  Defendant argues that Plaintiff cannot show that any unequal treatment was motivated by race in any event.

For the following reasons, the Defendant's Motion for Summary Judgment under Fed. R. Civ. P. 56 is GRANTED in part and DENIED in part.

## **Facts**

The following facts are viewed in the light most favorable to the Plaintiff.

On March 1, 2003, Turner was arrested for possession of stolen property.  He was driving a car that a friend loaned him.  The car was registered in his friend's name, but was reported stolen.  After being pulled over, Tuner urged the police officer to call his friend and verify that he lawfully possessed the car.  The police officer refused, and arrested Turner. The charge was later dismissed.

On July 6, 2004, Turner was arrested for first degree assault and second degree burglary.  Before the arrest, Turner and his girlfriend, Jill Craig, were at his apartment.  A man named Robert Johnson came to Turner's apartment and assaulted him.  Craig wanted to leave after the assault, so she went to get a cell phone from her car.  Craig took longer than expected to return, and Turner went looking for her at a neighbor's apartment.  Turner took a table leg with him because he was concerned that Johnson might assault him again. When Turner went inside his neighbor's apartment, Johnson was there pointing an assault rifle at him.  He knocked the rifle away from Johnson, and the two began fighting.  Officers Peninger and Roggenbuck arrived at the scene and detained both men. Officer Arand arrived a few minutes later to assist Peninger and Roggenbuck.  Turner had permission to be in his neighbor's apartment, and he was fighting with Johnson in self-defense.  Other tenants confirmed this account, but the officers arrested Turner and charged him with assault and burglary.  These charges were dismissed because Johnson lied to the prosecutor.

On August 8, 2004, Turner was pulled over for speeding by a Washington State trooper, and then

arrested for driving under the influence of alcohol.  Neither the state trooper nor the State of Washington is a defendant here.

On November 26, 2005, Turner was arrested for disorderly conduct.  He was involved in an altercation outside of a bar with a man named Tisdale.  Tisdale instigated the altercation by chest bumping Turner and calling him a nigger.  Turner pushed him away, and the two began yelling at each other.  Officers McFall, Scairpon, and Dropp were nearby and heard the argument.  All three officers ran over to defuse the situation.  Officer Drop tackled Turner, while officer McFall threatened him with a taser.  Tisdale was not restrained, and he began taunting Turner, saying "See that nigger? That's where a nigger's supposed to be, down on the ground! Get that nigger?"  Initially the police ignored Tisdale.  Multiple witnesses then informed the officers that Tisdale was the aggressor and Turner was defending himself.  Tisdale was never put in handcuffs, but both Turner and Tisdale were cited for disorderly conduct.

On March 4, 2006, Turner was arrested for malicious mischief domestic violence.  That day, he had an argument with Jill Craig. Turner called 911 because Craig would not let him leave her house.  During the argument he damaged some of his own personal property and kicked a small hole in Craig's garage door, but did not harm Craig.  Officers Knight and Thomas arrived a few minutes later.  Turner admitted to officer Thomas that he had kicked a hole in Craig's door.  Officer Knight arrested Turner and took him into custody.  Officers Arand and Peninger then arrived to assist, but Officers Knight and Thomas had the situation under control.  The malicious mischief charges were later dismissed.

In 2006, Turner contacted the local Police Chief to complain about his incidents with the Port Angeles Police Department.

On February 12, 2007, Turner was arrested for assault.  That evening, Christopher Johnson, a bartender, pushed Turner during a brawl.  In response, Turner stepped toward Johnson, but slipped and grabbed him so they both ended up on the ground.  Tuner then left and went home.  In the meantime, Johnson told officer Scairpon that Tuner had attacked him behind the bar.  Another witness corroborated Johnson's statement.  Scairpon and another officer then went to Turner's house with their hands on their weapons, and arrested him in the presence of his family.  The police did not have a warrant for his arrest.  The charges were later dismissed for lack of evidence.

## Procedural History

Plaintiff filed his original complaint in Clallam County Superior Court on April 15, 2008. Plaintiff amended his complaint to include his constitutional violation claim under 42 USC §1983. Defendant received the amended complaint on May 6, 2009, and removed the case to this Court on June 2, 2009. Defendant now seeks Summary Judgment on all of Plaintiff's claims.

## Discussion

### I. Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### II. State law claims based on incidents that occurred before February 15, 2005 are time barred.

Plaintiff filed his original complaint on April 15, 2008. Plaintiff's state law claims (except for false arrest) are governed by a three year statute of limitations. *See* RCW 4.16.080. Under RCW 49.60.020(4), a plaintiff is entitled to an additional sixty days to file a complaint based on a municipality's tortious conduct. Therefore, claims arising from events occurring before February 15, 2005, are time barred.

Plaintiff's claim for false arrest is subject to a two year statute of limitations. *See* RCW 4.16.100(1); *Heckart v. City of Yakima*, 42 Wn. App. 38, 39 (1985). Therefore, after adding the tolling provision, the applicable time bar date for that claim is Febrary15, 2006.

Plaintiff argues that all of his contacts with the Port Angeles Police should be considered a continuing violation. The continuing violation theory applies to §1983 claims, and the Court will address that argument in turn. Still, Plaintiff's state law causes of action must be based on incidents occurring within the aforementioned limitations period.

**III. Plaintiff's claims based on violations of the Washington State Constitution are unsupportable because the Constitution does not provide a private cause of action for damages.**

Plaintiff's complaint alleges violations of the Washington State Constitution as a ground for recovery. A plaintiff cannot maintain an action for damages based on constitutional violations, unless a statute so allows. *See Blinka v. Washington State Bar Association*, 109 Wn. App. 575, 591 (2001). Indeed, "Washington courts have consistently rejected invitations to establish a cause of action for damages based upon constitutional violations 'without the aid of augmentative legislation [.]'" *Id.* (*Quoting Sys. Amusement, Inc. v. State*, 7 Wn. App. 516, 517 (1972)). Plaintiff has not identified an enabling statute, and the court is not aware of any that would support Plaintiff's bare constitutional claims here. Plaintiff's Washington State Constitution violation claim is not supportable as a matter of law. Defendant's Motion for Summary Judgment is therefore GRANTED and this claim is DISMISSED WITH PREJUDICE.

**IV. Plaintiff's claim based on violations of RCW 10.31.100 can not be sustained because that statute does not provide a cause of action for damages.**

Plaintiff asserts a cause of action under RCW 10.31.100, alleging that Port Angeles Police officers arrested him without probable cause.[1] Defendant argues that the statute does not confer a right to money damages. RCW 10.31.100 provides:

> A police officer having probable cause to believe that a person has committed or is committing a felony shall have the authority to arrest the person without a warrant. A police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of the officer, except as provided in subsections (1) through

---

[1] Plaintiff's complaint alleges a cause of action under RCW 10.31.100(2). The Court reads this as a cause of action under RCW 10.31.100. Subsection (2) mandates arrest in certain domestic violence situations. That subsection is inapplicable here because an arrest must be supported by probable cause whether it is mandatory or permissive. Thus, the police could only violate this statute if they arrested Plaintiff without probable cause.

ORDER
Page - 5

(10) of this section.

Nothing in the text of this statute supports a claim for damages under it. Plaintiff has not identified a Washington case permitting a claim for damages based on a violation of RCW 10.31.100, and the court has not found one. Instead, proving a violation of that statute is generally the foundation of a false arrest or imprisonment claim because in those cases a plaintiff must prove that he or she was arrested without probable cause. Plaintiff has alleged a claim for false arrest, which the Court will address in turn. However, Plaintiff's claim for damages based solely on a violation of RCW 10.31.100 is not supportable. Defendant's Motion for Summary Judgment is GRANTED and this claim is DISMISSED WITH PREJUDICE.

**V.    Plaintiff's claim for Negligent Infliction of Emotional Distress fails because the police did not owe Plaintiff an individual duty.**

Plaintiff alleges a claim for NIED against Defendant based on his series of arrests. Defendant argues that municipal law enforcement activities are not subject to claims for NIED. It is true that law enforcement activities are generally not reachable in negligence. *Keates v. City of Vancouver*, 73 Wn. App. 257, 267 (1984). However, Defendant incorrectly infers that police officers are never liable for their negligent conduct. *See Garnett v. City of Bellevue*, 59 Wn.App. 281, 287 (1990)(Holding police officer liable for NIED).

The public duty doctrine limits the liability of public officials and municipal corporations in Washington. It provides that "no liability may be imposed for a public official's negligent conduct unless it is shown that 'the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general (i.e., a duty to all is a duty to no one).'" *Taylor v. Stevens County*, 111 Wn.2d 159, 163 (1988)(*Quoting J & B Dev. Co. v. King County*, 100 Wn.2d 299, 303 (1983)).

The pubic duty doctrine has four well recognized exceptions: legislative intent; failure to enforce; the rescue doctrine; and a special relationship. *Babcock v. Mason County Fire Dist. No. 6*, 144 Wn.2d 774, 786 (2001). Plaintiff argues that the last exception applies here. A special relationship exists when:

(1) There is direct contact or privity between the public official and the injured plaintiff which sets the latter apart from the general public, and (2) there are express assurances given by a public official, which (3) gives rise to justifiable reliance on the part of the plaintiff. *Cummins v. Lewis County*, 124 Wn.

ORDER
Page - 6

App. 247, 253 (2004).

For example, firefighters have a general duty to control fire. Therefore, the public duty doctrine shields firefighters from liability for negligent fire control because they owe no greater duty to the fire's victim than to the general public. However, if a firefighter contacts the neighbor of a house that is on fire, and assures the neighbor that the fire will not spread to his house, and as a result the neighbor does not remove his personal property, then that firefighter may face liability for negligence if the fire does in fact spread.

Plaintiff does not allege that a public official gave him any express assurance in this case. Instead, Plaintiff cites *Garnett v. City of Bellevue* to support his "special relationship" argument. In that case the court allowed a plaintiff's claim for NIED against a police officer who verbally abused her by calling her a prostitute and a hooker. *Garnett*, 59 Wn. App. 281. The trial court recognized that the facts did not fit an established exception to the public duty doctrine. It noted that "this case, although it doesn't fit under any of the four [exceptions to the public duty doctrine], presents a situation in which the doctrine should not be applied.... I suppose one could term it as a fifth exception, or a variation on the special relationship exception." *Id*. at 284-285.

Even if *Garnett* can be read to add another exception to the public duty doctrine, there is no reason to apply it here. The officer in *Garnett* made repeated cruel remarks to the plaintiff. No police officer ever treated Turner with such disrespect. In one instance where Tisdale was yelling racial epithets at him, the officers could have made a better effort to stop those comments, but the Court cannot hold the officers liable in negligence for remarks they did not make.

Turner's claim fails because the officers did not owe him a personal duty. The special relationship exception does not apply to these facts, and neither does any *Garnett* extension. Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's claim for NIED is DISMISSED WITH PREJUDICE.

**VI.    Plaintiff's false arrest claims fail because his arrests were supported by probable cause.**

Plaintiff claims that each incident with the Port Angeles Police ended in a false arrest. As noted earlier, the timely incidents include only the two arrests occurring after February 15, 2006. Defendant argues that the officers had probable cause for each arrest, and correctly notes that "probable cause is a complete defense to an action for false arrest." *Hanson v. City of Snohomish*, 121 Wn.2d 552, 563 (1993).

1  Plaintiff challenges Defendant's conclusion.

2  In Washington, "probable cause exists when the facts and circumstances known to an arresting
3  officer are sufficient to convince a reasonable person that a crime has been committed and that the person
4  to be arrested committed the crime." *Jamison v. Storm*, 426 F.Supp.2d 1144, 1161 (W.D.Wash. 2006).
5  Courts look at the entire circumstances, viewed in a practical manner, to determine whether this definition
6  is satisfied. *Id*.

7  On March 3, 2006, the police arrested Turner for malicious mischief.  Turner claims that the arrest
8  was improper because the officers did not observe him violating any laws.  Generally, police officers can
9  only arrest a suspect for a misdemeanor if the suspect commits the offense in the presence of an officer.
10 *See* RCW 10.31.100.  However, there is an exception to that rule:

11 Any police officer having probable cause to believe that a person has committed or is committing
12 a misdemeanor or gross misdemeanor, involving physical harm or threats of harm to any person or
13 property … shall have the authority to arrest the person. RCW 10.31.100(1).

14 A person is guilty of malicious mischief in the third degree, a gross misdemeanor, if he or she
15 knowingly and maliciously causes physical damage to the property of another. *See* RCW 9A.36.041.
16 Turner admitted to the police that he kicked a hole in his girlfriend's door.  Under these facts, the police
17 had probable cause to arrest turner for malicious mischief as a matter of law.  Therefore, the arrest was
18 allowed under RCW 10.31.100(1).[2]

19 On February 12, 2007, the police arrested Turner for 4th degree assault.  "A person is guilty of
20 assault in the fourth degree if, under circumstances not amounting to assault in the first, second, or third
21 degree, or custodial assault, he or she assaults another." RCW 9A.36.041.

22 According to Turner, he slipped and fell on Johnson.  Yet multiple witnesses told officer Scairpon
23 otherwise.  Even if Turner's version of the story is correct, the police had probable cause at the time of
24 arrest as a matter of law. *See State v. King*, 89 Wn. App. 612, 624 (1998)("Probable cause can arise from
25 the report of a crime victim or witness...").

26 Turner's other encounters with the police are barred by the statute of limitations. If they were not,

27

28 [2]Defendants also argue that 3rd degree malicious mischief requires arrest in the domestic violence context.  Whether the arrest was mandatory is of no consequence since the arrest was at least permissive under RCW 10.31.100(1).

ORDER
Page - 8

Plaintiff's false arrest claim would still fail. Briefly stated, Turner was arrested for being in possession of a stolen vehicle. In fact, the vehicle was reported stolen. He was arrested for burglary and assault when the police found him fighting in someone else's apartment. He was arrested for disorderly conduct after yelling and pushing someone outside of a bar. The police had probable cause to arrest Turner in each incident as a matter of law. Defendant's Motion for Summary Judgment is GRANTED on Plaintiff's claims for false arrest. Those claims are DISMISSED WITH PREJUDICE.

**VII. Turner's claims for malicious prosecution fail because the prosecutor had probable cause to institute criminal proceedings.**

Plaintiff alleges a claim of malicious prosecution, arguing that the charges brought against him were instituted without probable cause and were motivated by malice and racial discrimination. To sustain a claim for malicious prosecution a plaintiff must prove:

> "(1) that the prosecution claimed to have been malicious was instituted or continued by the defendant; (2) that there was want of probable cause for the institution or continuation of the prosecution; (3) that the proceedings were instituted or continued through malice; (4) that the proceedings terminated on the merits in favor of the plaintiff, or were abandoned; and (5) that the plaintiff suffered injury or damage as a result of the prosecution." *Clark v. Baines*, 150 Wn.2d 905, 911 (2004).

For the reasons previously discussed, the officers had probable cause to arrest with respect to each of Plaintiff's claims. For the same reasons, the prosecutor had probable cause to institute criminal proceedings. In addition, Plaintiff claims the proceedings were instituted with malice, but offers literally no evidence to support his allegation. Plaintiff's claims for malicious prosecution are unsupportable as a matter of law. Defendant's Motion for Summary Judgment on Plaintiff's malicious prosecution claim is GRANTED. That claim is DISMISSED WITH PREJUDICE.

**VIII. Plaintiff's deprivation of constitutional rights claims under 42 USC §1983**

**A) Incidents before February 15, 2005 are not part of a continuing violation and are time-barred.**

Defendant argues that the incidents occurring before February 15, 2005, cannot support a constitutional deprivation claim under §1983. Plaintiff argues that the court should consider all the incidents under the continuing violations theory, and treat them as one for his §1983 claim.

Federal courts generally borrow state statutes of limitation for personal injury actions in §1983 claims. *See Lukovsky v. City of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008). Washington's personal injury statute of limitations is three years. RCW 4.16.080. However, under the §1983 continuing violation theory, a plaintiff can maintain a suit based on incidents that fall outside the statute of limitations. *See Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472 (9th cir. 1989).

In order to do so, a plaintiff must show a systematic policy of discrimination or a series of related acts to establish a continuing violation. *Id*. Defendant correctly points out that this theory is usually applied in the employment context. Theoretically, there is no reason to limit it solely to those circumstances, but Plaintiff has not met his burden of establishing a continuing violation as a matter of law.

**1)   Plaintiff does not allege sufficient facts to prove a systematic policy of discrimination.**

To prove a systematic policy of discrimination, a plaintiff must show that an organization's long-standing system discriminates against an entire protected class. For example, in *Gutowsky v. County of Placer*, the court found a continuing violation where a female employee alleged that her employer maintained a discriminatory policy in its hiring and promotion of women. 108 F.3d 256 (9th Cir.1997). The plaintiff in that case challenged the everyday employment practices of her employer. *Id*. Also, in *Reed v. Lockheed Aircraft Corp.*, the court allowed the plaintiff's claim to continue when she alleged that the defendant's employment practices as a whole discriminated against women. 613 F.2d 757 (9th Cir.1980).

Plaintiff falls short of alleging that the Port Angeles Police have a policy or official practice of discriminating against African Americans. The Court will not allow a claim of a discriminatory policy based on this series of arrests of a single individual, especially when probable cause supported each of those arrests.

**2)   Plaintiff does not allege a series of related acts.**

To find a series of related acts, the alleged discriminatory acts must be related closely enough to constitute a continuing violation, and one or more of the acts must fall within the limitation period. *DeGrassi v. City of Glendora*, 207 F.3d 636, 645 (9th cir. 2000). In *DeGrassi*, the plaintiff had a series of hostile incidents between herself and city council members. The court held that "[Plaintiff's] allegations

ORDER
Page - 10

may show a long-standing state of animosity and hostility, marked by incidents of personal conflict between her and other City officials, but they do not establish a series of related wrongful acts." *Id.* The court refused to find a series of related events based solely on plaintiff's allegations that the incidents were closely related.

Plaintiff offers similar evidence in this case. He has alleged a series of isolated incidents between himself and various police officers. Each incident was months apart. Plaintiff fails to show a series of related acts as a matter of law. Therefore, the incidents that occurred before February 5, 2005, are time-barred and will not be considered. For reasons that follow, even if those incidents were considered a "continuing violation," Plaintiff's §1983 claim would still fail.

**B)   Plaintiff's §1983 claims fail because Plaintiff does not show a municipal custom or policy of discrimination.**

Plaintiff argues that the Port Angeles Police used excessive force and took unreasonable police action against him. He claims that these actions deprived him of liberty, equal protection of the law, and freedom from unreasonable searches and seizures.

In order to set forth a claim against a municipality under 42 U.S.C. § 1983, a plaintiff must show that the defendant's employees or agents acted through an official custom, pattern or policy that permits deliberate indifference to, or violates, the plaintiff's civil rights; or that the entity ratified the unlawful conduct. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 690-91 (1978); *Larez v. City of Los Angeles*, 946 F.2d 630, 646-47 (9th Cir. 1991).

Plaintiff has not alleged or established for purposes of summary judgment that the City of Port Angeles has an official custom, pattern, or policy of discriminating against African Americans, or more specifically, against Turner. Instead, Plaintiff seeks to impose liability against the City of Port Angeles because in 2006 he contacted the Police Chief to complain about racial harassment and unfounded arrests. Despite this effort, Turner was arrested again in 2007 for allegedly assaulting Christopher Johnson. Plaintiff suggests that the Police Chief ratified the alleged unlawful conduct.

When attacking a municipality based on an alleged unconstitutional policy, "It is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree

of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

Even assuming that the Police Chief's action or inaction in response to Turner's complaints can be attributed to the municipality, his response was not the "moving force" behind Turner's arrests. Instead, even viewed in the light most favorable to the Plaintiff, the evidence establishes that in 2007, he was arrested on reasonable suspicion of assault. Plaintiff has not and cannot establish the requisite casual link between the Sheriff's response and Turner's alleged constitutional deprivations. Thus, a municipal policy was not responsible for Turner's arrests as a matter of law.

Even if a plaintiff does not allege an official unconstitutional policy, a city may still be liable for a permanent and well-settled practice if it gave rise to the alleged constitutional violation. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Plaintiff alleges that the Port Angeles Police have an unofficial custom of harassing and falsely arresting him and other African Americans. However, "Proof of random acts or isolated events is insufficient to establish custom." *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995). Turner's evidence amounts to nothing more. In each incident, the arresting officer had probable cause to arrest him. This series of arrests, which were supported by probable cause, show a custom of enforcing the law, not of harassing Turner.

Neither an official policy nor an unofficial custom was responsible for Turner's arrests as a matter of law. Defendant's Motion for Summary Judgment is GRANTED. Plaintiff's constitutional deprivation claim is DISMISSED WITH PREJUDICE.

**IX.    Factual questions remain regarding Plaintiff's claim for violation of Washington's Law Against Discrimination.**

Plaintiff acknowledges that only one incident occurred in a place of public accommodation so that is the only incident the Court will address. Turner claims that the police violated WLAD on November 26, 2005, when they treated him differently than his co-defendant Tisdale. Defendant initially argues that Plaintiff fails to show that WLAD applies in the context of arrests. Defendant also argues that Turner and Tisdale were treated the same. Defendant contends that at any rate, Plaintiff has not met his burden of establishing that the police officers' actions were motivated by race.

RCW 49.60.215 prohibits discrimination in places of public accommodation:

> It shall be an unfair practice for any person or the person's agent or employee to commit an

act which directly or indirectly results in any distinction, restriction, or discrimination …
in any place of public resort, accommodation, assemblage, or amusement.

This statute can apply to arrests in public places. *See McKinney v. City of Tukwilla*, 103 Wn. App. 391 (2000)(Considering plaintiffs' argument that police violated WLAD by arresting African Americans who were in a park, but not arresting the Caucasians who were also present. The court dismissed plaintiffs' WLAD claim because they failed to show that the officers' conduct was motivated by race.)

An action for discrimination under WLAD requires a finding of particularized treatment, consciously motivated by race. *Evergreen School Dist. v. Johnson*, 39 Wn. App. 763, 773 (1985). Defendant claims that Turner and Tisdale were treated equally because both were cited for malicious mischief.  Using different means to achieve the same end is not necessarily equal treatment.  Turner was tackled and handcuffed, while Tisdale remained unrestrained.  The police threatened Turner with a taser, but made no such threat to Tisdale.  This incident is close, but the Court must view the facts in the light most favorable the Plaintiff.  Defendant does not show that Turner and Tisdale were treated equally as a matter of law.

Defendant also argues that any alleged unequal treatment was not based on race.  The reason for the differential treatment requires a fact based inquiry which the Court cannot resolve on a motion for summary judgment. Defendant's Motion for Summary Judgment on Plaintiff's claim for violation of WLAD is DENIED.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment [Dkt. #9] is **GRANTED in Part and DENIED in Part.**

Dated this 26th day of October, 2010.

*[signature: Ronald B. Leighton]*
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE